UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LARRY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-CV-836 JD |
| | ) | |
| THE CITY OF MICHIGAN CITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Police officers arrested Plaintiff Larry Taylor in May 2016 after misidentifying him as a

drug dealer whom they had been investigating. Taylor spent over two weeks in jail until the

officers realized their mistake. He then filed this action in state court against The City of

Michigan City, the Michigan City Police Department, Sergeant Ken Drake, and Detective

Michael Oberle, alleging various claims arising from this incident. Defendants removed the case

to this Court, and have filed for summary judgment. [DE 26] For the reasons stated herein, the

motion will be granted in part and denied in part.

## STANDARD

On summary judgment, the moving party bears the burden of demonstrating that there "is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as

affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

"genuine issue" exists with respect to any material fact when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

1

no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## FACTUAL BACKGROUND

On March 28, 2016, police officers staged a drug buy using a confidential informant as the buyer. The informant met an unknown suspect at a gas station and purchased cocaine from him. The officers videotaped the buy and showed a short portion of the buy and a still shot of the suspect's face to their commanding officer, Drake. Drake identified the suspect as Taylor, having previously encountered Taylor while working as a police officer. Oberle, the lead investigator on the case, then performed a criminal history check and an inquiry with the Bureau of Motor Vehicles ("BMV") to confirm Drake's identification. Oberle included these steps in his incident report, as well as the confidential informant's description of the suspect.

Several weeks later, on or about May 9, 2016, a probable cause affidavit for Taylor's arrest was filed in open court, and officers arrested him as part of a larger operation within a few days.[1] Taylor then remained in custody at the LaPorte County (Indiana) Jail for approximately eighteen days. During Taylor's detention, Drake and Oberle received information that led them to discover that they had misidentified Taylor as the suspect, and the prosecutor dismissed the state's case against Taylor on May 31, 2016, citing mistaken identity.

---

[1] The affidavit itself was not included in the summary judgment record by either party.

**DISCUSSION**

While not strictly delineated in his complaint, Taylor's lawsuit includes the following claims: (1) Indiana state law claims for both false arrest and false imprisonment against all Defendants; (2) a federal claim for false arrest pursuant to 42 U.S.C. § 1983 against Drake and Oberle;[2] (3) a § 1983 claim against the City and the Department[3]; (4) general negligence and negligent failure to train and supervise; and (5) defamation. The parties' briefs make no reference to Taylor's negligence-based claims and so the Court will not address them here. The Court will, however, dismiss Taylor's defamation claim pursuant to his concession that the record does not permit him to pursue this cause of action. [DE 30 at 20] Before proceeding, the Court also notes that Taylor's false arrest and false imprisonment claims are governed by his Fourth Amendment rights, as opposed to those rights enumerated in the Fifth and Fourteenth Amendments, which Taylor refers to in his complaint. *See Albright v. Oliver*, 510 U.S. 266 (1994) (holding that false arrest and false imprisonment claims fall under a plaintiff's Fourth Amendment rights; such claims do not implicate a violation of due process).

**1.      False Arrest and False Imprisonment**

Taylor's state claims for false arrest and false imprisonment and his federal false arrest claim all hinge on whether the officers had probable cause to arrest him. For the reasons discussed below, the Court cannot conclude that they did, and for similar reasons, Oberle will not

---

[2] Taylor's complaint brings these § 1983 claims against "All Defendants," but they can only implicate Drake and Oberle in their individual capacities; government entities may not be held liable under § 1983 via a theory of *respondeat superior*. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978).

[3] Again, Taylor's complaint lists "All Defendants" under this claim, but it is clear from the allegations' language that this claim is directed against the City and the Department based on a theory of *Monell* liability.

be held immune from Taylor's federal claim by way of qualified immunity. Drake, on the other hand, cannot be held liable under Taylor's § 1983 claim for false arrest, as he was not faced with the same circumstances and knowledge as was Oberle.

       *a.*     *No Probable Cause to Support Arrest*

Taylor's state claims for false arrest and imprisonment arise under Indiana common law, and his federal claims against Drake and Oberle arise under 42 U.S.C. § 1983, which provides a cause of action against any person who, while acting under color of state law, deprives an individual "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). No one contests whether Drake and Oberle acted under color of state law, rather the contested issue is whether the officers deprived Taylor of his rights under the Fourth Amendment to be free from unreasonable seizures.

An arrest and subsequent imprisonment (both, forms of seizure) are reasonable if based on probable cause that the individual has committed an offense. So to succeed on these claims under either Indiana or federal law, Taylor must show a question of fact with respect to whether the officers had probable cause for his arrest. *See Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) ("[A] plaintiff may establish both a § 1983 claim and an Indiana false imprisonment claim where his freedom of movement was limited or restrained in some way without probable cause."); *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) ("In order for [plaintiff] to prevail on his § 1983 false arrest claim, he must show that probable cause for his arrest was lacking."); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1104 (S.D. Ind. 2008) ("Generally, to succeed upon a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest.").

A police officer has probable cause for an arrest if, at the time of the arrest, the "facts and circumstances *within the officer's knowledge* … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (emphasis added); *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). "Probable cause … 'is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013); *Thayer v. Chiczewski*, 705 F.3d 237, 246 (2012) (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)). In determining whether probable cause exists, a court does not evaluate "the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006); *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008).[4]

On the present record, the Court cannot conclude that probable cause supported Taylor's arrest. Drake identified Taylor as the suspect by viewing a short snippet and a still shot captured from the drug buy video; he testified that he could not tell the height or weight of the suspect from what he viewed, but nonetheless recognized the suspect's face. Drake had never met the actual suspect and did not observe the drug buy, but he personally knew Taylor, having been dispatched to Taylor's residence while working the midnight shift and encountering him on the streets several other times. Drake was familiar with Taylor's appearance, including the fact that

---

[4] Indiana applies the same "prudent person" probable cause analysis. *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) ("Thus, both Indiana and federal law require the court to determine if there was probable cause for arrest, and both base the probable cause determination on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense."). The Court will therefore apply the same probable cause standard for both Taylor's state and federal claims.

Taylor stood (in Drake's estimate) roughly six feet two inches in height. In a vacuum, Drake's identification of the suspect's face as Taylor would create the requisite probable cause to arrest, even though his identification later turned out to be wrong. *See Bailey v. City of Chicago*, 779 F.3d 689, 694-95 (7th Cir. 2015) (affirming finding of probable cause based on witnesses' identification of plaintiff in a video even though the identifications were later shown to be wrong); *see also Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) ("Identification by a single eyewitness who lacks an apparent grudge against the accused person supplies probable cause for arrest.").

But a review of probable cause is based on the totality of the circumstances known to the officers, not on isolated facts. *Fox v. Hayes*, 600 F.3d 819, 834 (7th Cir. 2010) ("Nor does the probable cause standard allow the defendants to rely on facts without regard to the full context of the circumstances known to them."). When Drake identified Taylor as the suspect, Drake did not know the suspect's approximate height, but Oberle did. Oberle's role in the investigation included handling and debriefing the confidential informant, who immediately after the buy described the suspect as "[m]aybe five foot seven five foot eight, 150 pounds." (Transcript of Drug Buy Recording 8:18-23). Defendants present nothing to call this description into question—indeed, the confidential informant knew the suspect and had met him before—and Oberle incorporated it into his incident report. [DE 27-2 at 3] In addition, the record does not indicate that, upon identifying the suspect as Taylor, Drake gave the other officers an estimation of Taylor's height or weight.[5] Oberle, however, followed up with Drake's identification by running Taylor's name through the BMV records, which revealed Taylor's height as six feet two inches. (Deposition of Michael Oberle 17:10-14). Despite having knowledge of the conflicting

---

[5] At the time of Taylor's arrest, he weighed 238 pounds. [DE 30-7]

heights between Taylor and the suspect, Oberle reported in his incident report that "[u]pon

checking our computer system[6] and conducting a BMV Inquiry on Taylor, Detectives confirmed

that the subject known to be "Krug" was identified as Larry Taylor." [DE 27-2 at 4]

Slight variations in height and weight do not undermine probable cause. *See Yattoni v.

Oakbrook Terrace*, 14 F.3d 605, 1993 WL 537775, at *9 (7th Cir. 1993) ("[Plaintiff] was two

inches shorter and 20 pounds lighter than the man described by [the witness]. But the

descriptions were roughly correct, and no more than rough accuracy is required under *Neil*.")

(citing *Neil v. Biggers*, 409 U.S. 188 (1972)); *Bryant v. City of Chicago*, No. 13 C 1319, 2017

WL 1386174, at *5 (N.D. Ill. Apr. 18, 2017) (finding officers had probable cause to arrest

plaintiff who "approximately matched the general characteristics of the person described by the

confidential informant and in the search warrant, including his height, weight, skin color, and

complexion."); *see also Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006) ("This

circuit's cases have similarly recognized that discrepancies between an arrest warrant and the

arrestee's physical appearance, address, and birth date are often insufficient to create a genuine

factual dispute about whether arresting officers had probable cause.") (citations omitted). Here,

however, Taylor weighed nearly ninety pounds heavier and stood at least seven inches taller than

the suspect as described to Oberle. These significant differences required the officers to gauge

Taylor's description against that of the suspect.

In *Maxwell v. City of Indianapolis*, for example, the plaintiff brought a § 1983 false arrest

claim after his coworkers incorrectly identified him as a fugitive described on television. 998

---

[6] Oberle also performed a criminal history check on Taylor, which revealed a prior conviction for selling drugs. Prior convictions for similar crimes may lend support to establishing probable cause, but only if "[t]he facts *cumulatively* furnish a substantial basis for the probable cause determination." *United States v. Sewell*, 413 F. App'x 890, 892 (7th Cir. 2011) (prior conviction for selling drugs in combination with other facts may provide a substantial basis for probable cause in drug investigation) (emphasis added).

F.2d 431 (7th Cir. 1993). The television bulletin described the fugitive as "a male caucasian born on September 25, 1933 who is 5'11", weighs 175 pounds, and has grey hair, green eyes, a fair complexion, a grey moustache and a goatee. In addition, [the fugitive] is missing the tip of his left index finger." *Id.* at 432-33. The police met with Maxwell, who presented them with his Michigan driver's license and other forms of identification. *Id.* at 433. As it turned out, Maxwell shared nearly all the fugitive's characteristics except for his height and weight. *Id.*[7] Maxwell was much larger than the fugitive; he stood six feet five inches tall and weighed 270 pounds. *Id.* Despite this disparity, the officers arrested him. *Id.* The district court denied summary judgment for the defendant officers on the issue of whether they had probable cause to arrest Maxwell, and the Seventh Circuit affirmed, because "[a] review of the description of [the fugitive] in comparison to the appearance of Maxwell does raise a substantial question as to whether a prudent police officer would have probable cause to believe Maxwell was [the fugitive]." *Id.* at 434. Specifically, the difference in size between Maxwell and the fugitive "should have given the police officers pause." *Id.* at 435.

So too should the significant difference in size between Taylor and the suspect in this case have given Oberle reason to question whether Drake identified the right person before filing for an arrest warrant. *See Simmons v. City of Chicago*, Case No. 14 C 9087, 2017 WL 497755, at **12-13 (N.D. Ill. Feb. 7, 2017) (describing as "significant" the three- to six-inch height difference between plaintiff and the target of the warrant, and finding this mismatch "a bridge too far" for probable cause); *cf. Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 524-25 (7th Cir. 2001) (affirming finding of probable cause and noting that "[a]lthough [plaintiff's] appearance did not match exactly the characteristics provided by the two women, he

---

[7] Maxwell was even missing a fingertip on his left hand, although it was his middle rather than his index finger. *Maxwell*, 998 F.2d at 433.

bore a fair resemblance. It wasn't as if, given the description of a fairly good-size man, [plaintiff] looked like a guy who shopped at Napoleon's tailor."). Furthermore, despite Defendants' insistence, the fact that Taylor believed that a picture of the suspect was indeed him and that another individual who knew both Taylor and the suspect described them as "spitting images" of each other is of no moment. These facts surfaced *after* Taylor's arrest, and probable cause depends on "an *ex ante* test: the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time." *Qian v. Kautz*, 168 F.3d 949, 953-54 (7th Cir. 1999); *see also Goldberg v. Junion*, 208 F. Supp. 3d 977, 984 (S.D. Ind. 2016) ("As plaintiff rightly notes, 'the probable cause determination is made at the moment the arrest is made. Any evidence, therefore, that came to light after the arrest is not relevant to the probable cause inquiry.'") (quoting *Maltby v. Winston*, 36 F.3d 548, 557 (7th Cir. 1994)).

A conclusion that probable cause existed as a matter of law is only appropriate when no reasonable jury could find that probable cause did not exist at the time of Taylor's arrest. *Maxwell*, 998 F.2d at 434. Based on the facts herein, however, a reasonable jury could conclude that Oberle knew of yet improperly discounted the glaring size differential between Taylor and the suspect. *See Fox*, 600 F.3d at 834; *Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000) ("Police must act reasonably on the basis of what they know, and if what they know is more than an isolated sentence in a police report they can't close their eyes to the additional information."). Accordingly, the Court cannot conclude at this stage that Taylor's arrest was supported by probable cause.[8]

---

[8] Even if probable cause turned solely on Taylor's resemblance to the suspect's face as shown to Drake (rather than knowledge of the two individuals' sizes), that question "necessarily becomes a factual one for the jury." *Maxwell*, 998 F.2d at 435.

b.      *False Imprisonment*

Defendants also seek summary judgment on Taylor's state law false imprisonment claim, arguing that the officers had a "reasonable belief in probable cause" to arrest Taylor based on a totality of the circumstances. [DE 27 at 11-12] This argument depends on Defendants having been successful on the argument above. *See id.* at 11 ("Plaintiff's false imprisonment claims fail for the same reasons as his false arrest claim."). Because the Court has already rejected Defendant's position that probable cause supported Taylor's arrest, it will likewise deny summary judgment as to false imprisonment. *See Moore v. Banas*, No. 11 CV 5654, 2015 WL 5612366, at *4 (N.D. Ill. Sept. 23, 2015) (denying summary judgment on plaintiff's false imprisonment claim where Court previously denied summary judgment on false arrest claim for lack of probable cause).

c.      *Qualified Immunity*

Defendants maintain that even if probable cause did not exist for Taylor's arrest, Drake and Oberle are entitled to summary judgment on Taylor's federal claim under the doctrine of qualified immunity. Government officials are entitled to immunity from civil liability under § 1983 unless their conduct violates any clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, an officer is immune from suit unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). In the context of a false arrest claim, this means that an

officer is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed," or in other words, if the officer had "arguable probable cause." *Fleming*, 674 F.3d at 880 (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)) (internal quotation marks omitted).

At this stage, the Court cannot conclude that Oberle is entitled to qualified immunity. Assessing arguable probable cause requires the Court to "take into consideration the particular circumstances facing the officer." *Bruce v. Guernsey*, 777 F.3d 872, 879 (7th Cir. 2015). As discussed above, Oberle was faced with not just two different height and weight descriptions, but two *incompatible* descriptions. The BMV records informed him that Taylor stood six feet two inches, yet the confidential informant, who *knew* the suspect from before the drug buy, told him that the suspect stood approximately five feet seven inches. While a reasonable officer might take slightly varying height and weight descriptions with a grain of salt (as such differences normally do not defeat probable cause), the Court cannot conclude that a reasonable officer could have mistakenly believed that probable cause existed when faced with a difference of at least seven inches in height and nearly ninety pounds in weight between Taylor and the suspect. *See Maxwell*, 998 F.2d at 436 (finding officers were not entitled to qualified immunity where plaintiff stood six inches taller and weighed nearly one hundred pounds more than the description of the wanted fugitive). Taylor may proceed on his § 1983 claim that Oberle violated his Fourth Amendment rights.

Drake, on the other hand, is entitled to qualified immunity. Based on the record before the Court, Drake had no knowledge of the suspect's height before Taylor's arrest. Drake simply identified Taylor as the suspect based on a sample of video footage and a still shot of the suspect's face. In Drake's mind, the suspect's face was that of Taylor, and this identification was

bolstered by the fact that he personally knew Taylor from his years of service with the Department. *See Bailey*, 779 F.3d at 694-95 (considering security officer's mistaken identification of plaintiff in video footage nonetheless credible given his familiarity with plaintiff; officer had worked for eighteen months at the school attended by plaintiff). Drake never met or observed the suspect, nor does the record show that Drake knew the suspect had been described by the confidential informant as much shorter than Taylor. Drake did not review Oberle's incident narrative (which contained the informant's description of the suspect) until sometime after Taylor's post-arrest interview because the report had not been submitted until after Taylor's arrest (Deposition of Ken Drake 18:19-21:2; 23:19-23), and nothing indicates that Oberle alerted Drake to the height and weight discrepancy before filing for the arrest warrant.[9] Drake's identification of Taylor was reasonable, albeit mistaken. Therefore, Drake is immune from Taylor's § 1983 claim for false arrest.

## 2. *Monell* Claim

Finally, Taylor brings a § 1983 claim against the City and the Department. A municipality or governmental unit may be held liable for a constitutional deprivation under

---

[9] In fact, apart from his identification of the suspect's face, nothing suggests Drake had anything to do with the arrest itself. The parties do not brief whether or how Drake's limited involvement impacts his liability, and Oberle's testimony that the unit made decisions to arrest "as a whole" (Oberle Dep. 21:9-22:6) still does not implicate Drake given the record, because § 1983 requires personal knowledge (or at least a reason to know) that an arrest is unlawful before an officer can be liable for an arrest he did not make. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Although Drake served as Oberle's commander, supervisory liability can only be found under § 1983 "if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988). As explained above, Taylor has not shown that Drake knew about the significant difference in size between Taylor and the suspect. Thus, Drake cannot be held liable for Taylor's alleged § 1983 false arrest, regardless of the absence of probable cause and independent of qualified immunity. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001-02 (7th Cir. 2003) (holding that police chief could not be held liable for plaintiff's arrest where record did not suggest chief had knowledge that an unlawful arrest was imminent).

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). However, "[a] governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); *see also Monell*, 436 U.S. at 694. An unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the loss. *Id.*; *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To hold defendants liable under § 1983, [a plaintiff] must demonstrate that the defendants' 'official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury.'") (quoting *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)). In essence, "there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Taylor acknowledges that this case does not involve any express policies, and so he must provide evidence that the City and the Department maintained widespread practices that were so entrenched and well-known as to carry the force of policy. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). The Seventh Circuit has acknowledged that there is "no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three. But the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) and *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). Ultimately, to hold the City and the Department liable for a harmful custom or practice, Taylor must show that the policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Gable*, 296 F.3d at 537. In

other words, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997); *see also Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) (stating that a finding of deliberate indifference requires a showing that policymakers "were aware of a substantial risk" of a constitutional violation and "failed to take appropriate steps to protect [plaintiffs] from a known danger").

Here, Taylor maintains that the City and the Department should be held liable for failing to adequately train their police officers in facial recognition. He also highlights a portion of Drake's deposition testimony to support an additional ground for liability, that supervisors should (but do not) review investigative reports prior to an arrest. According to Drake, the Department's report management system does not generate investigative reports for supervisors' review until after an investigation has been completed (and after an arrest has already been made). (Drake Dep. 18:23-20:15; 23:19-23). But Taylor does not point to any officers other than Drake and Oberle who have not had formal facial recognition training, or any officers who have misidentified a suspect based on a lack thereof. Nor does he cite any example apart from the instant circumstances of when a unit commander's failure to review an incident report prior to the arrest of an individual resulted in a violation of that individual's constitutional rights. In this regard, Taylor's *Monell* claim falls well short of demonstrating practices so widespread as to constitute policy. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; *a series of violations must be presented to lay the premise of deliberate indifference.*") (emphasis added); *see also Gable*, 296

F.3d at 538 (holding that "three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Taylor urges the Court to ignore the fact that he has presented no other examples of constitutional violations and maintains that the "crucial question" of whether there is a custom or practice is answered in the affirmative by Drake's testimony that the Department's report management system does not make incident reports available for review until after an investigation has been completed. [DE 30 at 15-16] But this detail about the Department's system cannot overcome the fact that, by failing to show any resulting constitutional violations other than his own arrest, Taylor has not demonstrated that the City or the Department were aware of a risk of misidentifications and acted with deliberate indifference by failing to protect him (or others) from being wrongly identified as a suspect. He therefore has not shown the requisite culpability here. *See Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (noting that a plaintiff could make this showing "by evidence of a series of bad acts that the policymaking level of government was bound to have noticed").

Taylor's attempt to hold the City and the Department liable based on Drake's role as the street crimes unit commander also fails. To succeed on this *Monell* theory, Taylor must show that Drake's position was not merely one of administration, but of policymaking power. As the Seventh Circuit has stated: "The authority … to *set* policy—i.e., to adopt rules for the conduct of government—distinguishes a 'final policymaker,' whose decisions may subject a municipality to § 1983 liability, from an official who merely possesses 'authority to *implement* pre-existing rules.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008) (citations omitted and emphasis in *Argyropoulos*). "State or local law determines whether a person has policymaking authority for purposes of § 1983." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009).

The *only* regulation or policy Taylor cites, however, states that the street crimes unit commander was responsible for "'planning and conducting the operations and closely supervising all undercover and covert operations.'" [DE 30 at 17 (quoting Department Policy)] Based on this, Taylor maintains "[i]t is a reasonable inference that Drake was in a role of policymaking authority ...." [DE 30 at 17] But the language cited here does not grant the street crimes unit commander the authority to *set policy* for how the unit carries out narcotics investigations, only to plan, conduct, and supervise operations within the already-existing rules. *See Waters*, 580 F.3d at 581-82 (finding city transportation commissioner did not have policymaking authority in employment matters where plaintiff presented no evidence that personnel rules granted department heads anything more than authority to implement existing policy).

Even if Taylor presented evidence to establish that Drake was a final policymaker, he has still failed to present any evidence to prove that Drake violated his constitutional rights by misidentifying him as the suspect or otherwise knew that probable cause did not support Taylor's arrest. This shortcoming is particularly problematic in the *Monell* context, because "it is not enough for a plaintiff simply to show an intentional act by a policymaker that results in a constitutional deprivation. A § 1983 plaintiff must prove culpability, i.e., that the policymaker intentionally deprived him of a constitutional right." *Waters*, 580 F.3d at 583. As discussed above, nothing in the record suggests that Drake knew the suspect stood much shorter than Taylor when he provided the misidentification. All Drake had before him was an image of the suspect's face, and no one doubts the genuineness of his mistake. In effect, Taylor seeks to hold the City and the Department vicariously liable for the acts of a nonpolicymaking employee, but "[t]he law does not allow for municipal liability under § 1983 in such a case." *Id.* at 585.

Therefore, Taylor's theory of liability premised on Drake's purported policymaking authority cannot move forward, and the Court will grant summary judgment on Taylor's *Monell* claim.

## CONCLUSION

For all the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment. [DE 26] Specifically, the Court grants summary judgment in favor of Drake as to Taylor's § 1983 false arrest claim on qualified immunity grounds. The Court also grants summary judgment in favor of the City and the Department on Taylor's *Monell* claim. Finally, the Court dismisses Taylor's defamation claim pursuant to his own concession. The Court denies all other requested relief, and so the following claims move forward: (1) Taylor's claims for false arrest and false imprisonment under Indiana law against all Defendants; (2) Taylor's § 1983 false arrest claim against Oberle; and (3) Taylor's negligence-based claims against all Defendants. The Court will contact the parties to set a scheduling conference to explore the next steps in this case.

SO ORDERED.

ENTERED:  December 11, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court